IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| BENEVIS CORP., *et al.*[1] | ) Case No. 20-33918 (MI) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**DEBTORS' MOTION (I) FOR ENTRY OF AN ORDER
(A) APPROVING AUCTION AND BID PROCEDURES AND
(B) SCHEDULING AN AUCTION FOR THE SALE OF THE DEBTORS'
ASSETS; AND (II) FOR ENTRY OF AN ORDER (A) APPROVING THE SALE
OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS AND (B) AUTHORIZING THE ASSUMPTION
<u>AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **A hearing will be conducted on this matter on August 25, 2020 at 1:30 p.m. CST in courtroom 404, 515 Rusk Avenue, Houston, TX 77002.**
>
> **Audio communication will be by use of the court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554.**
>
> **You may view video via GoToMeeting. To use GoToMeeting, the court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "judgeisgur" in the GoToMeeting app or click the link on Judge Isgur's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "bankruptcy court" from the top menu. Select "Judges' Procedures," then "view home page" for Judge Isgur. Under "electronic appearance" select "click here to submit electronic appearance". Select the case name, complete the required fields and click "submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as follows: Benevis Corp. (0242); LT Smile Corporation (2818); Benevis Holding Corp. (0222); Benevis Affiliates, LLC (7420); Benevis, LLC (5524); Benevis Informatics, LLC (7833). The address of the Debtors' headquarters is 1090 Northchase Parkway S.E., Suite 150, Marietta, GA 30067.

The above-captioned debtors and debtor in possession (the "Debtor") respectfully states as follows in support of this motion (the "Motion"):

**Relief Requested**

1.  Prior to the filing of this case, the Debtors embarked upon a comprehensive marketing process with respect to the sale of the Debtors' assets in an effort to maximize the value of its assets for the benefit of its stakeholders. The Debtors negotiated the asset purchase agreement attached hereto as Exhibit A (the "Stalking Horse Agreement") for the sale of substantially all of the Debtors' assets to New Benevis Holdco, Inc. (the "Stalking Horse Bidder"). The Stalking Horse Bidder is an affiliate of New Mountain Finance Corporation, who with its affiliates is one of the principal prepetition and DIP lenders to the Debtors. Pursuant to the Stalking Horse Agreement and as more fully set forth therein, the Stalking Horse Bidder has offered to purchase the Purchased Assets (as defined in the Stalking Horse Agreement) (the "Stalking Horse Bid") in exchange for (a) a credit bid in the amount of the Prepetition Obligations (as defined in the Final DIP Order) less $10 million and the DIP Obligations (as defined in the Final DIP Order) *plus* (b) the assumption by the Stalking Horse Bidder of the Assumed Liabilities (as defined in the Stalking Horse Agreement) and payment of all Cure Costs.

2.  The Debtors seek authority to implement bid procedures designed to encourage competitive bidding. In an effort to avoid chilling third party bidding, the proposed procedures (i) exclude any breakup fee or expense reimbursement for the Stalking Horse Bidder, and (ii) provide that the Stalking Horse Bid is subject to higher and better offers.

3.  The Debtors seek approval of the bid procedures, the form of the Stalking Horse Agreement, and notice procedures related to the assumption and assignment of executory contracts and unexpired leases. The Debtors further request entry of the Sale Order approving the proposed

sale to the Stalking Horse Bidder on the terms set forth in the Stalking Horse Agreement or to the highest or otherwise best bid (the "Winning Bid" and such bidder the "Winning Bidder") received at auction and authorizing the assumption and assignment of certain executory contracts and unexpired leases.  The highest or otherwise best bid will be determined by the Debtors in the full exercise of their business judgment and fiduciary duties, taking into consideration each bid's overall effect on the Debtors' estates.

4. The Debtors propose on the first day of these cases an auction schedule because it needs to carefully tread competing forces while maximizing the value of its Assets.  Each day the Debtors languish in bankruptcy, administrative expenses mount and erode potential recoveries. Covid-19 causes additional uncertainty and risk to companies operating in the current environment.  Given the marketing process undertaken by the Debtors both before filing and post-petition, a subsequent prolonged marketing period is not necessary under the circumstances. The schedule is appropriate.  The proposed procedures and process provide the Debtors' estate the best chance of maximizing recoveries.

### Jurisdiction and Venue

5. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

7. On this date (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

8. A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Scott Mell, Chief Restructuring Officer of Benevis, Inc., in Support of the Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") filed at ECF No. 12.

9. In an effort to maximize the enterprise value of the Debtors, a comprehensive sales process was launched in June 2020. The Debtors retained Lincoln Partners Advisors LLC ("Lincoln"), a multinational investment banking firm with approximately 500 professionals in more than 22 offices around the world, to conduct a marketing and sale process for all or substantially all of the Debtors. These efforts included engaging in discussions with the Debtors' Prepetition Lenders as well as Lincoln launching a broad marketing process with both financial and strategic buyers. Over the 45 (forty-five) days immediately preceding the Petition date, Lincoln contacted 68 strategic and financial parties as part of a robust marketing outreach. Of the potential bidders contacted by Lincoln, 48 executed confidentiality agreements and conducted comprehensive due diligence on the Debtors, its business and its assets, representing a "take rate" of over 71%. These efforts included in-depth calls with management and telephonic calls with Lincoln. Interested parties who executed confidentiality agreements received a Confidential Information Presentation prepared by Lincoln and were provided access to an extensive data room and other detailed information on the Debtor.

10. During the pre-petition marketing sale process, the Debtors received multiple non-binding Indications of Interest to acquire all or substantially all of the Debtors' assets. Based

upon a comprehensive review of the proposals received, the Debtors concluded that no other party could provide an Asset Purchase Agreement on as or more favorable terms than those provided by a New Mountain affiliate (the "Stalking Horse Bidder"). Therefore, it was determined that the Stalking Horse Bidder would serve as the stalking horse subject to higher offers in accordance with the bidding procedures to be approved by the Court. Lincoln will continue the Debtors' marketing effort during these cases in an effort to secure higher and better offers for the Debtors' assets. The post-petition marketing efforts will include all strategic and financial parties contacted pre-petition and additional buyers that may have interest in the opportunity.

## I.  RELIEF REQUESTED

11.     The Debtors seek approval of an auction process and sale of substantially all of their assets.

**A.    The Bid Procedures, Form of Stalking Horse Agreement, and Form of Notice.**

12.     The Debtors seek approval of the bid procedures (the "Bid Procedures") and the form of Stalking Horse Agreement, both attached to the proposed Bid Procedures Order.[2] The Bid Procedures are designed to maximize value for the Debtors' estates, while ensuring an orderly and efficient sale process. The Bid Procedures are the result of good faith, arm's-length negotiations with the Stalking Horse Bidder. These transparent Bid Procedures represent a fair balance between the need for process, the exigencies of the Debtors' liquidity constraints, and other circumstances present in this case.

---

[2] In the event of a conflict between this Motion and the Bid Procedures Order, the terms of the Bid Procedures Order shall prevail.

5

**B.     Notice Relating to Potential Assumption and Assignment of Executory Contracts and Unexpired Leases.**

13.     As part of the Sale, the Debtors seek authority to assume and assign to the Winning Bidder certain executory contracts and/or unexpired leases selected by the Winning Bidder (the "Designated Contracts").

14.     With respect to any contract that may be designed as a Designated Contract, the Debtors request approval of the following notice procedures:

    a.    No later than two (2) days prior to the hearing to approve the sale (the "Sale Hearing"), the Debtors will file with the Court and serve on each party to a potentially Designated Contract a notice setting forth the amount of cure owed thereunder according to the Debtors' books and records (the "Cure Notice").  The Cure Notice shall state the cure amount that the Debtors believe is necessary to assume the contract or lease pursuant to Bankruptcy Code section 365 (the "Cure Amount") and notify each party that the party's lease or contract may be assumed and assigned to the Winning Bidder selected by the Debtors in accordance with the procedures.

    b.    Any objection to the Cure Amount or the assumption and assignment of such potential Designated Contract must be filed with the Court (the "Cure Objection Deadline") (i) by no later than twenty one (21) calendar days after the Cure Notice is Served, (ii) be in writing; (iii) served on (a) counsel to the Debtors, Jackson Walker, LLP, 1401 McKinney, Suite 1900, and (b) counsel to New Mountain, Jones Walker LLP, Suite 2900, 811 Main St., Houston, TX 77002 Attn: Joseph E. Bain and Proskauer Rose LLP, Eleven Times Square, New York, NY 10036 Attn: David M. Hillman and Lucy F. Kweskin; and (iv) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to.  If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any Designated Contract or other document as of the date of the Cure Notice; the non-debtor party to the Designated Contract shall be deemed to have stipulated that the Cure Amount set forth in the Cure Notice is correct; the non-debtor party shall be forever barred, estopped and enjoined from asserting or claiming against the Debtors or the Winning Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Designated Contract or that there is any objection or defense to the assumption and assignment of such Designated Contract, including any argument that there exist conditions to assumption and assignment that must be satisfied under the Designated Contract or that any required

6

          consent to assignment has not been given; and the non-debtor party to the Designated Contract shall be forever barred from objecting on any other basis on which to object to such assumption and assignment (other than an objection on the basis of adequate assurance of future performance which shall be filed by the Sale Objection Deadline). To the extent an objection to any Cure Amount is timely filed, the objection may be heard in conjunction with the Sale Hearing or at a later date and time as the Debtors may elect in its sole discretion.

    c.    The Winning Bidder reserves the right to amend the scheduled Designated Contracts through and including the closing date of the Sale. Service of a Cure Notice does not constitute any admission or agreement of the Debtors that the Designated Contract is an executory contract or unexpired lease or that the Designated Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Winning Bid. Only those contracts and leases on the list of Designated Contracts at the time of the closing of the sale shall be assumed, assigned and sold to the Winning Bidder.

**C.    Minimum Overbid.**

15.    In order to be a qualified bid, a third party's minimum initial overbid must be in an amount equal to the Reserve (as defined in the Bidding Procedures) under the applicable Stalking Horse Agreement, <u>plus</u> an amount equal to 1.0% of the Stalking Horse Bid (the "<u>Initial Bid Increment</u>"). At the Auction, each successive overbid must be in the minimum increment of $250,000. The Stalking Horse Bidder may submit additional bids at the Auction including a credit bid up to the full amount of the outstanding DIP Obligations and the Prepetition Obligations (as each term is defined in the Final DIP Order), which shall be credited on a dollar-for-dollar basis.

**D.    The Sale of Assets is an Exercise of the Debtors' Sound Business Judgment.**

16.    Bankruptcy Code § 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate; however, bankruptcy courts in this District and elsewhere have required a sound business justification for the use, sale, or lease of property of the estate out of the ordinary course of business. *See Institutional Creditors of Continental Air Lines, Inc v. Continental Air Lines, Inc., et al. (In re Continental Air*

7

*Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."). Once the debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *Bartlinski v. Sanchez*, 39 F.Supp. 862, 866 (S.D.Tex. 2014); *In re S.N.A. Nut Co.*, 86 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (". . . a presumption of reasonableness attaches to a Debtor's management decisions.").

17. Selling the Assets pursuant to a competitive bidding process consistent with the Bid Procedures is justified. The Stalking Horse Agreement (or, if the Stalking Horse Bidder is not the prevailing bidder, an alternative bid resulting from the Bid Procedures) will constitute the highest or otherwise best offer for the Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. Indeed, the proposed sale process is a necessary step towards the implementation of the Debtors' plan of liquidation. The Debtors' determination to sell the Assets under the terms of the Stalking Horse Agreement (or through a competitive bidding process as provided for in the Bid Procedures) is a valid and sound exercise of the Debtors' business judgment.

18. The Debtors are proposing a fair process in order to obtain the highest or otherwise best offer for the sale of the Assets for the benefit of the Debtors' estates and their creditors.

**E.     Request to Approve Sale Free and Clear Pursuant to 11 U.S.C. § 363(f).**

19. The Debtors also request that the Court approve the sale of the Assets to the Winning Bidder pursuant to Bankruptcy Code §§ 105, 363, and 365. This portion of the relief is

requested to be entered after the Sale Hearing pursuant to the attached proposed Sale Order. The sale of the Assets to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement, or such other asset purchase agreement as the Debtors may reach with the Winning Bidder, is in the best interest of the Debtors' estates and should be approved.

20. A debtor should be authorized to sell assets out of the ordinary course of business pursuant to Bankruptcy Code § 363 and prior to obtaining a confirmed plan or reorganization if it demonstrates a sound business purpose for doing so. *See also In re Gulf Oil Corp.*, 404 B.R. 407 (Bankr. S.D. Tex. 2009). Factors considered in approving a sale outside of plan include: (i) the business justification, (ii) the amount of elapsed time since the filing date, (iii) whether the proposed bid procedures and Stalking Horse Agreement facilitate competitive bidding, (iv) whether the assets have been aggressively marketed, (v) the likelihood that a plan will be confirmed in the near future, (vi) the effect of disposition on the future plan, and (vii) whether the assets are increasing or decreasing in value. *Id.*

21. The Debtors have a sound business justification for the proposed sale. The proposed sale process reflects the culmination of the Debtors' efforts to monetize its Assets at their highest value. Further, the Stalking Horse Agreement provides for a "Wind Down Amount" to be left behind with the Debtors to fund (i) all accrued, unpaid and allowed administrative expense claims in the Bankruptcy Case, and (ii) an orderly liquidation, dismissal or conversion of the Bankruptcy Cases and the dissolution of the Debtors to be used in accordance with a budget determined with the consent of the Stalking Horse Bidder (to be finalized prior to the Sale Hearing and attached as an exhibit to the Sale Order).[3]

---

[3] The Stalking Horse Agreement provides that (a) any residual amount remaining after the payment of the items set forth in (i) – (ii), such amounts shall be promptly delivered to the Stalking Horse Bidder and (b) in the event the Debtors have insufficient cash on hand to fund the Wind Down Amount, the Stalking Horse Bidder will have no obligation to fund any shortfall.

22. The Debtors request that the Court approve the sale of the Assets free and clear of all liens, claims, interests, and encumbrances. In evaluating the sale, a court must balance the need for flexibility with the concern of affected creditors. *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 715 (Bankr. W.D. Tex. 1989). The Court must also determine that creditors' lien rights are adequately protected and that the offered price is the highest price and/or best terms obtainable under the circumstances in the particular case. *Id.*

23. The Debtors may sell the Assets free and clear of all liens, claims, interests and encumbrances, pursuant to section 363(f). Any lien, claim, or encumbrance will be adequately protected by attachment to the net proceeds of the sale, subject to any claims and defenses the Debtors may possess or the Debtors will obtain the consent of the party holding the lien, claim or encumbrance. The Debtors request that the Assets be sold to the Winning Bidder free and clear of all liens, claims, interests and encumbrances, with all liens, claims, interests and encumbrances attaching to the proceeds of the sale of the Assets.

### F. Authorization of Assumption and Assignment of Executory Contracts and Unexpired Leases.

24. To enhance the value of the sale of the Assets, the Debtors request approval under Bankruptcy Code § 365 of the Debtors' assumption and assignment of the Designated Contracts to the Winning Bidder. The Debtors further request that the Sale Order provide that the Designated Contracts will be transferred to, and remain in full force and effect for the benefit of, the Winning Bidder notwithstanding any provisions in the Designated Contracts, including those described in Bankruptcy Code §§ 365(b)(2) and (f)(1) and (3) that prohibit the assignment.

25. Adequate assurance of future performance depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction." *Tex. Health Enters. v. Lytle Nursing Home (In re Tex. Health Enters.)*, 72 Fed. Appx. 122, 126 (5th Cir. 2003); *see also*

*In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance."). Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., Tex. Health Enters.* 72 Fed. Appx. at 126.

26. The Debtors will present facts at the Sale Hearing to show the financial credibility, willingness, and ability of the Winning Bidder to perform under the Designated Contracts. The Sale Hearing will afford the Court and other interested parties the opportunity to evaluate the ability of the Winning Bidder to provide adequate assurance of future performance under the Designated Contracts, as required under Bankruptcy Code § 365(b)(1)(C). Further, as set forth above, the Debtors will give notice to all parties to the Designated Contracts of their intention to assume the Designated Contracts and what the Debtors believe are the Cure Amounts. The Court should authorize the Debtors to assume and assign the Designated Contracts to the Winning Bidder.

## Waiver of Stay Under Bankruptcy Rules 6004 and 6006

27. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Here, an expeditious closing of a sale is necessary and appropriate to maximize value for the estate. Accordingly, the Debtors request that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

**Notice**

28.     Notice of this Motion shall be given to: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to New Mountain, Jones Walker LLP, Suite 2900, 811 Main St., Houston, TX 77002 Attn: Joseph E. Bain and Proskauer Rose LLP, Eleven Times Square, New York, NY 10036 Attn: David M. Hillman and Lucy F. Kweskin; (d) counsel to BMO, Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, IL 60661 Attn: Geoff King; (e) counsel to Sun Life, ATTN: Usman Bajwa, Managing Director, Sun Life Capital Management, One York Street, Suite 3200, Toronto, ON M5J 0B6, [usman.bajwa@SLCManagement.com](mailto:usman.bajwa@SLCManagement.com); (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; (i) the United States Department of Health and Human Services; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

**Conclusion**

The Debtors request that the Court enter the attached proposed order granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
August 3, 2020

/s/ *Matthew D. Cavenaugh*
**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Veronica A. Polnick (TX Bar No. 24079148)
Genevieve M. Graham (TX Bar No. 24085340)
Vienna F. Anaya (TX Bar No. 24091225)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:         mcavenaugh@jw.com
               vpolnick@jw.com
               ggraham@jw.com
               vanaya@jw.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**CERTIFICATE OF SERVICE**

I certify that on August 3, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Matthew D. Cavenaugh*
Matthew D. Cavenaugh