**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BENEVIS CORP., *et al.*[1] | ) Case No. 20-33918 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Relates to Docket No.** \_\_\_\_ |

**ORDER (A) APPROVING AUCTION AND BID PROCEDURES, AND
(B) AUTHORIZING AND SCHEDULING AN AUCTION
FOR THE SALE OF THE DEBTORS' ASSETS**

The above-captioned debtors and debtors in possession (the "Debtors") filed their motion (the "Motion")[2] for entry of an order (this "Bid Procedures Order"), (a) approving Auction and Bid Procedures, and (b) authorizing and scheduling an Auction for the Sale of the Debtors' Assets, as more fully set forth in the Motion. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 and venue of the Motion is proper pursuant to §§ 1408 and 1409. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order on the Motion. The relief requested in the Motion is in the best interests of the Debtors, their estates, stakeholders, and other parties in interest and the Debtors gave sufficient and proper notice of the Motion and related hearings. Upon consideration of the Motion and after considering arguments and evidence presented in support of the Motion, the Court finds that good cause exists to grant the requested relief. **The Court finds that**:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as follows: Benevis Corp. (0242); LT Smile Corporation (2818); Benevis Holding Corp. (0222); Benevis Affiliates, LLC (7420); Benevis, LLC (5524); Benevis Informatics, LLC (7833). The address of the Debtors' headquarters is 1090 Northchase Parkway S.E., Suite 150, Marietta, GA 30067.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1. Notice of the Motion and hearing was sufficient under the circumstances of this case and complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules. No further notice of the Motion and any related hearings or this Bid Procedures Order is necessary or required.

2. The Bid Procedures were proposed by the Debtors in good faith with the goal of maximizing the value of its assets for the benefit of all creditors of its estate.

3. The Debtors demonstrated a compelling and sound business justification both in the Motion and on the record at the hearing for the Court to grant the relief requested related to the entry of an order approving the Bid Procedures.

4. All objections, if any, to the Motion relating to the Bid Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Bid Procedures or by stipulation filed with the Court are overruled except as otherwise set forth in this Order. **IT IS THEREFORE ORDERED THAT:**

**A.    Key Dates**

5. **Bid Deadline**. On or before 5:00 p.m. Central Time on September ____, 2020 (the "Bid Deadline"), Qualified Bids must be delivered to (i) the Debtors' counsel at mcavenaugh@jw.com, vpolnick@jw.com, ggraham@jw.com, and vanaya@jw.com; (ii) the Debtors' proposed Chief Restructuring Officer, Scott Mell, at smell@conwaymackenzie.com; (iii) the Debtors' proposed investment banker, Brendan J. Murphy, at bmurphy@lincolninternational.com; (iv) counsel to the Stalking Horse Bidder at: dhillman@proskauer.com, speck@proskauer.com, lkweskin@proskauer.com, jbain@joneswalker.com; (v) counsel to the Prepetition Agent and DIP Agent, geoff.king@katten.com; and (vi) counsel to the Committee (if any).

6. **Cure Notice Deadline**. Not later than September _____, 2020, (the "Cure Notice Deadline"), the Debtors will file with the Court and serve the Cure Notice.

7. **Auction**. If one or more timely Qualified Bids are received by the Bid Deadline, the Auction for the Assets will be conducted by video conference, the details of which will be provided to Qualified Bidders in advance of the Auction.

8. **Deadline to Object to Cure Notice**. Any objections to the Cure Notice, including the Cure Amount or the assumption and assignment of any contract or lease must be filed by October _____, 2020 at 5:00 p.m. (the "Cure Objection Deadline").

9. **Deadline to Object to Sale**. Any objections to the proposed sale (other than an objection to the Cure Notice) including any objection to the Winning Bidder's adequate assurance of future performance must be filed by September _____, 2020 at 5:00 p.m. (the "Sale Objection Deadline").

10. **Sale Hearing**. A hearing to approve a sale based on the Winning Bid(s) shall take place on September _____, 2020, at _____:_____ _.m. in Courtroom 40_, on the fourth floor of the United States Courthouse, 515 Rusk, Houston, Texas 77002.

B. **Bid Procedures.**

11. The Bid Procedures, substantially in the form attached as **Exhibit 1**, are approved in their entirety. The Bid Procedures shall govern the submission and analysis of all bids relating to the proposed sale of the Assets. The Debtors are authorized to take any and all actions necessary to implement the Bid Procedures.

12. No bidder, including the Stalking Horse Bidder, is entitled to any expense reimbursement. The Stalking Horse Bidder is not entitled to a break-up fee or bid protections in the event that the Stalking Horse Bidder is not the Winning Bidder on any of the Assets.

3

13. The Bid Procedures are fair and reasonable, are reasonably calculated to produce the best and highest offers for the Assets, and will confer actual benefits upon the Debtors' estates. The Bid Procedures represent an exercise of the Debtors' sound business judgment and will facilitate an orderly sale process.

**C.    Sale Objections.**

14. Objections (if any) to approval of a Sale shall be in writing, shall set forth the name of the objecting party, the basis for the objection and the specific grounds therefor, and shall be filed with the Court on or before the Sale Objection Deadline.

15. Any objection not filed and served in accordance with the preceding paragraph shall be deemed waived and shall be forever barred.

16. The failure of any party to file and serve an objection to the Sale as ordered and directed in this Order shall be deemed the consent of such party to the granting of the Motion and the sale and transfer of the Assets.

**D.    Cure Notice.**

17. No later than the Cure Notice Deadline, the Debtors will file with the Court and serve on each non-debtor party to an executory contract or unexpired lease a notice setting forth the amount of cure owed thereunder according to the Debtors' books and records (the "Cure Notice"). The Cure Notice shall state the cure amount that the Debtors believe is necessary to assume the contract or lease pursuant to Bankruptcy Code § 365 (the "Cure Amount") and shall notify each non-debtor party that the party's lease or contract may be assumed and assigned to the Winning Bidder to be identified at the conclusion of the Auction.  Further, if a contract or lease is designated as a Designated Contract by the Winning Bidder, then unless a counterparty properly and timely files and serves a Cure Objection pursuant to the Cure Notice, the counterparty will

receive payment from the Winning Bidder of the Cure Amount (if any) as set forth in the Cure Notice consistent with the terms and procedures set forth in the Winning Bidder's asset purchase agreement.

18.     No later than the Cure Objection Deadline, any objection to the Cure Amount must be filed with the Court.  Any objection to the Cure Amount must (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to; and (iv) be filed with the Court no later than the Cure Objection Deadline.  If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any executory contract, unexpired lease or other document as of the date of the Cure Notice; the non-debtor party to the executory contract or unexpired lease shall be deemed to have stipulated that the Cure Amount set forth in the Cure Notice is correct; the non-debtor party shall be forever barred, estopped and enjoined from asserting or claiming that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such contract or lease or that there is any objection or defense to the assumption and assignment of such contract or lease, including any argument that there exist conditions to assumption and assignment that must be satisfied under such contract or lease or that any required consent to assignment has not been given.  To the extent an objection to any Cure Amount is timely filed, such objection may be heard in conjunction with the Sale Hearing or at such later date and time as the Debtors and Winning Bidder may elect.

19.     The Winning Bidder reserves the right to amend the scheduled Designated Contracts through and including the closing date of the sale.  In the event a timely objection to a

5

Cure Amount for any Designated Contract is still pending at the time of the closing of the sale to the Winning Bidder, such Winning Bidder shall have the option not to assume such Designated Contract until 30 days following the date on which the Cure Amount has been determined by the Bankruptcy Court or the counterparty to such Designated Contract and the Winning Bidder have agreed on the Cure Amount for such Designated Contract.  Service of a Cure Notice does not constitute any admission or agreement of the Debtors that the Designated Contract is an executory contract or unexpired lease or that the Designated Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Winning Bid.

20. The Debtors are hereby authorized to execute any additional or supplemental document incident to the relief granted pursuant to this Bid Procedures Order.

21. Notwithstanding Bankruptcy Rules 6004, 6006, or otherwise, this Bid Procedures Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are waived.

22. The terms of this Order shall control to the extent of any conflict with the Motion.

23. The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Bid Procedures Order.

Signed:

                                                         MARVIN ISGUR
                                                         UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BENEVIS CORP., *et al.*[1] | ) Case No. 20-33918 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Relates to Docket No. ____** |

## BID PROCEDURES

On _____, 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order (A) Approving Auction and Bid Procedures, and (B) Authorizing and Scheduling an Auction for the Sale of the Debtors' Assets* [ECF No. ___] (the "Bid Procedures Order"),[2] which approved these bid procedures (the "Bid Procedures"). The Bid Procedures set forth the process by which the Debtors are authorized to conduct an auction (the "Auction") for the sale (the "Sale") of Debtors' Assets.

**Assets to be Sold**. The Debtors seek to sell substantially all of the Debtors' assets (the "Assets"), described in the Stalking Horse Agreement as the Purchased Assets.

**Free and Clear of Any and All Claims and Interests**. Except as otherwise provided in the Winning Bidder's purchase agreement, all of the Debtors' right, title, and interest in and to the Assets shall be sold free and clear of all liens, claims, encumbrances and interests (collectively, the "Encumbrances") to the maximum extent permitted by § 363 of the Bankruptcy Code (other than Permitted Liens and Assumed Liabilities), with these Encumbrances to attach to the proceeds of the Sale with the same validity and priority as such Encumbrances applied against the Assets.

**Due Diligence**. Only parties that execute a Confidentiality Agreement with the Debtors and that the Debtors determine in consultation with the Consultation Parties (as defined below) have a good faith intent to place a Qualified Bid shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Debtors. The Debtors will provide to these parties reasonable due diligence information, as requested by parties in writing, as soon as reasonably practicable after request, and the Debtors shall post all written due diligence provided to any party to the Debtors' electronic data room. The due diligence period will end on the Bid Deadline and, subsequent to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as follows: Benevis Corp. (0242); LT Smile Corporation (2818); Benevis Holding Corp. (0222); Benevis Affiliates, LLC (7420); Benevis, LLC (5524); Benevis Informatics, LLC (7833). The address of the Debtors' headquarters is 1090 Northchase Parkway S.E., Suite 150, Marietta, GA 30067.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bid Procedures Order. In the event of a conflict, the terms of the Bid Procedures Order shall prevail.

the expiration of the due diligence period, the Debtors shall have no obligation to furnish any due diligence information. The Debtors shall not furnish any confidential information relating to the assets or liabilities of the Debtors, or the Sale to any person except to such party or to such party's duly authorized representatives to the extent expressly permitted by the applicable Confidentiality Agreement.  The Debtors and their advisors shall coordinate all reasonable requests from these parties for additional information and due diligence access; provided that the Debtors may decline to provide information to parties who, at any time and in the Debtors' reasonable business judgment after consultation with its advisors, have not established that the party intends, in good faith or has the capacity, to consummate the Sale.  Requests for due diligence should be directed to the Debtors' investment banker, Brendan J. Murphy, at bmurphy@lincolninternational.com.

**Qualified Bidders**.  Only Qualified Bidders may participate in the bidding process.  To become a Qualified Bid and Qualified Bidder, each bid (the "Bid") and each party submitting such bid (the "Bidder") must satisfy the following conditions:

   a.   The Bid must be submitted by the Bid Deadline.

   b.   The Bidder shall have executed and delivered to the Debtors a confidentiality agreement prepared by the Debtors (a "Confidentiality Agreement");

   c.   The Bidder shall deposit with the Debtors, in cash, 10% of the cash portion of the bidder's proposed purchase price (each, "Alternative Bidder Deposit"), which deposit shall be refundable as described below;

   d.   The Bid shall be an unqualified and binding bid with no contingencies or conditions (including obtaining financing or any internal approvals or performing any additional diligence);

   e.   The Bid must provide cash consideration equal to or in excess of (i) the amount fo the DIP Obligations as of the closing of such Qualified Bidders bid *plus* (ii) the amount of the Prepetition Obligations *less* $10 million (the "Reserve") *plus* (iii) the Initial Bid Increment (defined below);

   f.   The Bidder shall submit an executed written agreement that is substantially similar to the form of the Stalking Horse Agreement (with a redline showing any changes from the Stalking Horse Agreement);

   g.   The Bid shall be irrevocable through the Auction, *provided, however*, that if such Bid is accepted as the Winning Bid or the BackUp Bid, such Bid shall continue to remain irrevocable on the terms set forth in the Bid Procedures.

   h.   The Bidder shall submit financial and other information to the Debtors, including support indicating the availability of funds to satisfy the purchase price, sufficient to allow the Debtors to make a reasonable determination as to such bidder's ability to consummate a sale as contemplated herein with a closing date no later than [●], 2020 as well as adequate assurance of future performance information;

2

     i. The Bid must identify any and all executory contracts and unexpired leases of the Debtors that the bidder wishes to have assumed and assigned;

     j. The Bid shall include written evidence demonstrating appropriate corporate authorization to consummate the proposed alternative transaction;

     k. The Bid must fully disclose the identity of each entity that will be bidding for and purchasing the Debtors' assets or otherwise participating in connection with the bid;

     l. The Bid shall expressly provide that the bidder is prepared to consummate the transaction promptly following entry of the Sale Order and that the offer reflected in such bid shall remain open and irrevocable until the conclusion of the Auction.

  The Debtors shall determine in its discretion and in consultation with the Consultation Parties, which Bids meet the above criteria, and if so, such Bid shall constitute a "Qualified Bid" and such Bidder shall constitute a "Qualified Bidder."  Any Bid that the Debtors determine in consultation with the Consultation Parties do not meet the above requirements shall be rejected as non-conforming bids.  The Debtors shall inform Bidders whether or not their Bids have been designated as Qualified Bids no later than twenty-four (24) hours after the Bid Deadline.  A joint bid (a bid submitted on behalf of more than one Qualified Bidder) or a bid by an alternative bidder on a different combination of assets from the Purchased Assets listed in the Stalking Horse Agreement may, in the Debtors' business judgment, and in consultation with the Consultation Parties, be deemed a Qualified Bid if it otherwise complies with all of the requirements set forth above.  Notwithstanding anything herein, unless the Stalking Horse Bidder consents, no bid other than the Stalking Horse Bid shall be determined to be a Qualified Bid nor the Winning Bid unless it provides for cash consideration in excess of the Reserve.  In addition, the Debtors shall have the right to negotiate with any bidder with respect to clarification of any bid.  For the avoidance of doubt, and as set forth below, the Stalking Horse Agreement is a Qualified Bid and the Stalking Horse Bidder is a Qualified Bidder.  If the Debtors determine, in consultation with the Consultation Parties, that a bidder is not a Qualified Bidder, the Debtors will refund such bidder's Alternative Bidder Deposit within five (5) business days after the Bid Deadline.

**Bid Deadline**.  On or before 5:00 p.m. Central Time on [●], 2020 (the "Bid Deadline"), Qualified Bids must be delivered to (i) the Debtors' counsel at mcavenaugh@jw.com, vpolnick@jw.com, ggraham@jw.com, and vanaya@jw.com; (ii) the Debtors' proposed Chief Restructuring Officer, Scott Mell, at smell@conwaymackenzie.com; (iii) the Debtors' proposed investment banker, Brendan J. Murphy, at bmurphy@lincolninternational.com; (iv) counsel to the Stalking Horse Bidder at: dhillman@proskauer.com, speck@proskauer.com, lkweskin@proskauer.com, jbain@joneswalker.com; (v) counsel to the Prepetition Agent and DIP Agent, geoff.king@katten.com, geoff.auyeung@katten.com; and (vi) counsel to the Committee (if any).

**Notice of Qualified Bidders**.  Within one (1) business day following the Bid Deadline, the Debtors shall file a notice with the Court identifying all Qualified Bidders other than the Stalking

Horse Bidder. The Debtors shall serve a copy of the notice on all the contract parties provided by each Qualified Bidder by electronic mail.

**Due Diligence from Qualified Bidders**. Each Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Qualified Bidder to consummate the applicable Sale. Failure by a Qualified Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is no longer a Qualified Bidder or that a bid made by such Qualified Bidder is not a Qualified Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable Confidentiality Agreement, except as otherwise set forth in these Bid Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with this Chapter 11 Case or in accordance with the terms of any applicable Confidentiality Agreement.

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtors and the Debtors' advisors may disclose confidential information: (i) with the prior written consent of such bidder and the Debtors; (ii) to the applicable bidder; and (iii) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

**Stalking Horse Bidder**. The Stalking Horse Agreement is and shall be deemed a Qualified Bid. The Stalking Horse Bidder is and shall be deemed a Qualified Bidder. The Stalking Horse Bidder is a credit bidder and thus is not required to make any deposit with the Debtors. The Stalking Horse Bidder shall have the unqualified right at any time to credit bid on a dollar-for-dollar basis up to the full amount of the outstanding Prepetition Obligations and DIP Obligations (as each term is defined in the Final DIP Order).

If no other Qualified Bids are received by the Bid Deadline, the Stalking Horse Bid shall be deemed the Winning Bid, the Stalking Horse Bidder shall be deemed the Winning Bidder, and the Debtors shall seek approval of a sale to the Stalking Horse Bidder on the terms of the Stalking Horse Agreement at the Sale Hearing.

**Auction**. If one or more Qualified Bids (other than the Stalking Horse Bid) are received by the Bid Deadline, the Auction for the Assets will be conducted on [●], 2020, starting at 10:00 a.m. via video conference. Only Qualified Bidders may participate in the Auction and only the Debtors, Qualified Bidders, the United States Trustee, the Prepetition Secured Parties,[3] and the Official Committee of Unsecured Creditors (the "Committee"), along with their representatives and advisors, shall be entitled to attend the Auction. All Qualified Bidders, or their authorized representatives with authority to bind the Qualified Bidder, must be physically present at the

---

[3] As such term is defined in the Final DIP Order.

4

Auction. At the commencement of the Auction, the Debtors shall announce the bidding order, which shall be based on: (i) the amount of the Qualified Bidder's bid (from low to high); and (ii) if Qualified Bids are identical, the time the Qualified Bids were delivered to the Debtors (the first such received identical bid going first in the Auction). The initial minimum overbid increment at the Auction shall be not less than an amount equal to 1.0% of the Stalking Horse Bid (the "Initial Bid Increment"). Each successive overbid must be in the minimum increment of $250,000. All bidding for the Assets will be concluded at the Auction and there will be no further bidding at the Sale Hearing. If the Debtors do not receive one or more Qualified Bids (other than the Stalking Horse Bid) by the Bid Deadline, the Debtors will not conduct the Auction.

**No Collusion.** Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Qualified Bid is a good-faith bona fide offer and it intends to consummate the proposed Sale if selected as the Winning Bidder.

**Selection of the Winning Bid**. The Auction shall continue until there is only one remaining bid for each asset or group thereof, that the Debtors determine, in consultation with the Consultation Parties, subject to Bankruptcy Court approval, is the highest or otherwise best Qualified Bid submitted by a Qualified Bidder (the "Winning Bidder," and such highest or otherwise best Qualified Bid, the "Winning Bid"), and the next highest or otherwise best Qualified Bid (the "Back-Up Bid") submitted by a Qualified Bidder (the "Back-up Bidder"). For the avoidance of doubt, if there are Qualified Bids for different portions of the Assets, there may be multiple Winning Bidders.

In the course of evaluating Qualified Bids, the Debtors may consider, without limitation, the amount of the purchase price, including, whether such bid provides funds sufficient to satisfy any prepetition secured obligations, the form of consideration being offered including, but not limited to, the satisfaction or elimination of potential plugging and abandonment liabilities, the amount, type and nature of any changes proposed to be made to the Stalking Horse Agreement, the risks and likelihood of the Qualified Bidder's ability to close a given transaction, the proposed timing thereof, the rights of such Qualified Bidder and the Debtors with respect to the termination thereof, and the net benefit to the Debtors' estates. The Debtors reserve the right to, with the consent of the Stalking Horse Bidder (which consent shall not be unreasonably withheld), designate a Qualified Bid as the Winning Bid even if it is not the highest bid in terms of purchase price if the Debtors, in the exercise of their business judgment, determine that the total consideration and/or net value to the estate is greater for a particular bid.

At the conclusion of the Auction, the Debtors will announce the Winning Bid and Back-Up Bid. The Debtors will seek Court approval of the Winning Bid at the Sale Hearing. If, for any reason, the Qualified Bidder submitting the Winning Bid fails to timely consummate the purchase of the Assets, the Debtors may seek to consummate a sale based on the Back-Up Bid without further approval by the Court in which case the Back-Up Bidder shall be deemed the Winning Bidder. The Back-Up Bid and the obligation of the party submitting such bid to consummate the purchase of the Assets shall remain open and in full force, including with respect to the Back-Up Bidder's Deposit, until the close of a sale of the Assets to the party making the Winning Bid or the party making the Back-Up Bid. The Debtors reserve the right to not select any Winning Bid or Winning Bidder with respect to any Asset or package thereof.

**Sale Hearing**.  A hearing to approve a sale based on the Winning Bid(s) shall take place on [●], 2020, at [__:__ _.m.] in Courtroom [●], on the fourth floor of the United States Courthouse, 515 Rusk, Houston, Texas 77002.

**Deadline to Object to Sale**.  Any objections to the proposed sale (other than an objection to the Cure Notice) including objections to the Successful Bidder's adequate assurance of future performance must be filed two (2) calendar days prior to the Sale Hearing.

**Deposits Held in Escrow; Return of Deposits**.  The Alternative Bidder Deposits shall be held in a noninterest bearing escrow account established and held by and in the name of the Debtors.  For the avoidance of doubt, the Alternative Bidder Deposits are not property of the Debtors or its estate.  Within five (5) business days after the conclusion of the Auction, the Debtors shall return by check or wire the full amount of each Alternative Bidder Deposit submitted by a party that is not selected as Winning Bidder or the Back-Up Bidder.  If the sale of the Assets is consummated with the party submitting the Winning Bidder, the Back-Up Bidder Bidder's Deposit shall be returned by check or wire transfer within five (5) business days after the closing of such sale.  Notwithstanding anything herein to the contrary any deposit shall be returned within five (5) business days after the entry of an order dismissing or converting the chapter 11 case under section 1112 of the Bankruptcy Code or appointing a chapter 11 trustee or an examiner or other estate representative with expanded powers.

**Sale is "As Is/Where Is"**.  Except as otherwise provided in the Stalking Horse Agreement, any sale agreement with respect to Winning Bid or a Back-Up Bid or any order approving the Sale, any and all portions of the Assets sold pursuant to the Bid Procedures shall be conveyed at the closing of the Sale in their then-present condition, "As is, where is, and with all faults, and without any warrant whatsoever, express or implied" as substantially provided in section 5.17 of the Stalking Horse Agreement.

**Notice of Bid Procedures, Auction, and Sale Hearing**.  On the first business day following the entry of the Bid Procedures Order, the Debtors will serve by first-class mail a copy of the Bid Procedures and a notice containing the date of the Bid Deadline, Auction, the Sale Hearing, and the deadline to file objections to the sale to: (i) all potential purchasers previously identified or solicited by the Debtors and their professionals; (ii) the Office of the United States Trustee; (iii) the Internal Revenue Service and all applicable taxing authorities; (iv) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any of the Assets; (vi) all applicable United States, state and local regulatory, environmental or taxing authorities, recording offices and any other governmental entity that has a reasonably known interest in the Assets, including the United States Department of Health and Human Services, (vii) all non-debtor parties to the Designated Contracts; (viii) the 30 largest consolidated unsecured creditors of the Debtor; (ix) all parties on the most current master service list filed in this case; (x) all parties requesting notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure; (xii) all statutory committees appointed in this case; and (xiii) the Debtors' pre-petition secured lenders and their counsel.  This notice shall be sufficient and proper notice of the Sale with respect to known interested parties.

**Consultation Parties.**  The term "Consultation Parties" as used in these Bid Procedures shall mean counsel and advisors to (i) the Debtors, (ii) the Prepetition and DIP Lenders, and (iii) the

Committee (if any).  No later than entry of the Bid Procedures Order, the Debtors or Lincoln Financial shall provide regular updates to the Consultation Parties in writing and/or orally regarding the status of the marketing and Sale process for the Assets and, as soon as reasonably practicable, shall respond to any inquiries from the Consultation Parties regarding the Sale. The failure to specifically identify consultation rights in any section of these Bid Procedures and/or the Bid Procedures Order shall not limit or otherwise impair the rights of the Consultation Parties or the Committee to consult with the Debtors.

**Reservation of Rights.** The Debtors reserve their right to modify these Bid Procedures in their business judgment, after consultation with the Consultation Parties (and subject to the consent of the Stalking Horse Bidder to the extent any modification (i) conflicts with any agreement with the Stalking Horse Bidder, or (ii) would delay the date of the Auction), in any manner that will best promote the goals of these Bid Procedures or impose, at or prior to the Auction, additional customary terms and conditions on Sales, including, without limitation (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Sale Hearing; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

**Fiduciary Duties.**  Notwithstanding anything to the contrary in the Bid Procedures, the Bid Procedures Order, or any other document, order, or instrument (including the Transaction Support Agreement), nothing in the Bid Procedures shall require the Debtors, after consulting with counsel, to take any action or to refrain from taking any action with respect to any sale or other transaction to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Houston, Texas
August 3, 2020

/s/ *Matthew D. Cavenaugh*
**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Veronica A. Polnick (TX Bar No. 24079148)
Genevieve M. Graham (TX Bar No. 24085340)
Vienna F. Anaya (TX Bar No. 24091225)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
vpolnick@jw.com
ggraham@jw.com
vanaya@jw.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

7